UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEMAJ LEON FRAZIER,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DAREN MATTESON, et al.,<br><br>　　　　　Defendants. | Case No. 1:19-cv-00188-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE TO ACTION<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM FOR RELIEF<br><br>(ECF No. 27)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Semaj Leon Frazier is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court for screening is Plaintiff's seventh amended complaint, filed on October 17, 2019. (ECF No. 27.)

**I.　　Introduction**

Plaintiff commenced this action by filing his original complaint on February 11, 2019. (ECF No. 1.) On July 18, 2019, before his original complaint was screened, Plaintiff filed a first amended complaint. (ECF No. 10.)

On July 29, 2019, Plaintiff lodged a second amended complaint. (ECF No. 13.)

On August 1, 2019, Plaintiff filed a motion to amend his complaint and lodged a third

1

amended complaint. (ECF Nos. 13, 14.)

On August 29, 2019, Plaintiff filed a second motion to amend his complaint and lodged another third amended complaint. (ECF No. 17, 18.)

On September 9, 2019, Plaintiff filed a third motion to amend his complaint. (ECF No. 19.) On September 20, 2019, Plaintiff filed another motion to amend and lodged a fifth amended complaint. (ECF No. 20, 21.)

On September 24, 2019, the Court issued an order denying as moot three of Plaintiff's motions to amend his complaint, granting one of Plaintiff's motions to amend his complaint, and directing the Clerk of the Court to file the lodged third amended complaint as the Sixth Amendment Complaint. (ECF No. 22.) Additionally, the Court screened Plaintiff's sixth amended complaint, determined that Plaintiff's sixth amended complaint failed to state any cognizable claims for relief, and directed Plaintiff to file either a seventh amended complaint, or a notice of voluntary dismissal, within 30 days from the date of service of the order. (Id.)

On October 17, 2019, Plaintiff filed his seventh amended complaint. (ECF No. 27.)

## II. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.  Summary of Plaintiff's Seventh Amended Complaint

Plaintiff is currently housed at California Substance Abuse Treatment Facility and State Prison, Corcoran. Plaintiff names the following Defendants: (1) Hanford Police Department Officer Daren Matteson; (2) Hanford Police Department Officer Jean Michel Bidegaray; (3) Patricia Driscol; (4) Mindy Crow; (5) Kings County Superior Court Judge Michael J. Reinhart; (6) District Attorney Ty Ford; (7) John P. Dwyer; (8) Dawn Bickner; and (9) Retired Kings County Superior Court Judge Harry Papadakis.

Plaintiff alleges as follows:

> Matteson acted with willful negligence when he deprived Frazier the right to refuse to answer questions. After Frazier complied with the self-incrimination privilege and requested to speak to a[n] attorney. Matteson lied and stated in his report no more questioning was done. Frazier arrived at Kings County Jail and Matteson asked Frazier if he could take pictures of his body. Those pictures were used in Fraziers speedy trial. Matteson deprived Frazier [of] the right to be left alone when he tampered with vaginal swabs and submitted them to testing with his initials on them without authority of law. That resulted in unequal treatment from intentional discrimination. Officer Bidegaray acted with willful negligence when he deprived Frazier of liberty, freedom of locomotion, and fundamental fairness when he lied under oath with first hand knowledge of the victims first story. Then lied and said it was detective Matteson report that he had, and a unjustified detention of Frazier when he willful detained Frazier without probable cause. That resulted in unequal treatment from intentional discrimination. Driscol acted with willful negligence when she deprived Frazier fundamental fairness when she lied about pictures that she did not take of the victim and submitted a incomplete S.A.R.T. kit without a blood sample which was her procedure to do, that resulted in unequal treatment from intentional discrimination. Ford acted with reckless

3

negligence to deprive Frazier fundamental fairness, life, and liberty, and a fair hearing when he lied to the jury that Matteson was the first officer to interview the victim and said if the stories changed they would all know about it. Ford conspired with Reinhart to cover up the first story by the victim. Ford recklessly used inadmissible pictures and illegal DNA evidence by the police, that resulted in unequal treatment from intentional discrimination. Crow acted with willful negligence and tested illegal DNA evidence from the police and lied and she did not review any reports to make sure that the DNA evidence was collected properly to [avoid] contamination. Prior to that Crow had already stated that she did go threw her procedure to make sure the DNA evidence was not contaminated. That resulted in the unequal treatment from intentional discrimination.

(ECF No. 27, at 4-6.) Plaintiff further alleges:

Reinhart acted with willful negligence when he deprived Frazier effective assistance of counsel, fundamental fairness, life, and liberty when he conspired with Ford and Bidegaray to cover up the victim first story. Reinhart introduced Bidegaray policy report that Bidegaray had with him. Reinhart asked about the detailed statements in Bidegaray report of the victim story. Bidegaray said he didn't get into a detailed interview. Reinhart said it's written in your report. Ford objected and held a discussion at the bench. Reinhart came back and said he was maybe confused and apologized to Bidegaray. Reinhart said but that's not your report, this is who's report. Bidegaray lied and said Detective Matteson. Reinhart lied about the consensual sex theory to obviate the DNA report. Reinhart lied and said he gave Frazier all the police reports with the intent to further conspire with Ford to prevent Frazier from discovering the victim changed her story. That resulted in the unequal treatment from intentional discrimination. Dwyer acted with willful negligence when he deprived Frazier fundamental fairness, effective assistance of counsel, life and liberty when he conspired with Reinhart after they held a discussion over the phone on June 12, 2012 about the jury selection proceeding in regard to augmenting the record and about Reinhart decision not to consult with or appoint a DNA expert witness. Then lied to Frazier in typed letters that Frazier suffered no prejudice from the Miranda violation because the police interview was not introduced and that there was nothing wrong with the prosecutor DNA evidence and it was strong evidence Frazier had sex with the victim, and it's not a appealable issue because it's not in the record. That resulted in the unequal treatment from intentional discrimination. Bickner acted with willful negligence when she deprived Frazier of fundamental fairness by artifice when she did not have Officer Bidegaray name labled in the witnesses chronological index with reckless indifference to her procedure to cover up the conspiracy by Reinhart, Ford, and Bidegaray that resulted in the unequal treatment from intentional discrimination. Papadakis acted with willful negligence when he deprived Frazier fundamental fairness, life, liberty and a fair hearing when he allowed improper evidence to be introduced, and instructed the jury improperly with a reckless intent that resulted in the unequal treatment from intentional discrimination.

(Id. at 5, 7-8.) Plaintiff seeks compensatory damages in an amount to be determined, punitive

4

damages in the amount of $1,000,000,000.00, injunctive relief, mandamus relief, and any further relief that the Court deems just and proper. (Id. at 7.)

**IV. Discussion**

    **A. "Person" Within the Meaning of § 1983**

"Under Section 1983, a 'person' acting under color of law may be sued for violations of the U.S. Constitution or federal laws. The term 'persons' under section 1983 encompasses state and local officials sued in their individual capacities, private individuals and entities which acted under color of state law, and local governmental entities." Garcia v. City of Merced, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) (internal citation omitted). However, it is well established that attorneys for criminal defendants, whether public defenders, court-appointed, or retained, do not act under color of state law based solely upon their job or position. Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981) ("[A] lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983."); Szijarto v. Legeman, 466 F.2d 864, 864 (9th Cir. 1972) (holding that a claim of ineffective assistance of a retained trial attorney was not a cognizable claim under § 1983 because "an attorney, whether retained or appointed, does not act 'under color of' state law."). However, an attorney for a criminal defendant may be liable as a private actor under § 1983 if the attorney "conspired or entered joint action with a state actor." Crowe v. Cnty. of San Diego, 608 F.3d 406, 440 (9th Cir. 2010).

    In this case, Plaintiff's allegations against Defendant Reinhart, his trial counsel, and Defendant Dwyer, his appellate counsel, generally relate to their representation of Plaintiff and their performing of traditional lawyer functions. Therefore, Defendants Reinhart and Dwyer did not act under color of state law when they represented Defendant at trial or on appeal. Polk Cnty., 464 U.S. at 325 (a court-appointed attorney does not act under color of state law when performing the traditional functions of a lawyer); see also Miranda v. Clark Cnty., 319 F.3d 465, 469 (9th Cir. 2003). While Plaintiff also alleges that Defendant Reinhart conspired with state actors, Defendants Ford and Bidegaray, to cover up the victim's first story, Plaintiff's allegations regarding the conspiracy between Defendants Reinhart, Bidegaray, and Ford are conclusory and

insufficient to state a cognizable conspiracy claim. Simmons v. Sacramento Cnty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003). Therefore, since Plaintiff has failed to allege facts demonstrating that Defendants Reinhart and Dwyer were acting "under color of state law" for § 1983 purposes, Plaintiff has not stated any cognizable § 1983 claim against Defendants Reinhart and Dwyer. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### B. Judicial Immunity

"Judges and those performing judge-like functions are absolutely immune from damage liability for acts performed in their official capacities." Ashelman v. Pope, 793 F.2d 1072, 1075 (9th Cir. 1986). Additionally, judicial immunity extends to preclude prospective injunctive relief against a state court judge for acts or omissions made in that judge's official capacity. 42 U.S.C. § 1983 ("[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.") Therefore, "judicial immunity is an immunity from suit, not just from ultimate assessment of damages. Accordingly, judicial immunity is not overcome by allegations of bad faith or malice[.]" Mireles v. Waco, 502 U.S. 9, 11 (1991) (internal citation omitted). Instead, the law is clear that judicial immunity is overcome in only two circumstances: (1) "a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity[;]" and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. at 12.

Here, Plaintiff's seventh amended complaint asserts that Defendant Papadakis, the Superior Court judge who presided over Plaintiff's criminal trial, allowed improper evidence to be introduced and improperly instructed the jury. However, the allegations against Defendant Papadakis are for actions taken in his judicial capacity. See Stump v. Sparkman, 435 U.S. 349, 362 (discussing factors a court must consider in deciding if an act by a judge is a "judicial" act). Further, Plaintiff has failed to allege any facts demonstrating that Defendant Papadakis' actions were taken in the complete absence of all jurisdiction. Therefore, Defendant Papadakis is

///

absolutely immune from Plaintiff's § 1983 action. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### C. Prosecutorial Immunity

"Prosecutorial immunity applies to § 1983 claims. State prosecutors are absolutely immune from § 1983 actions when performing functions 'intimately associated with the judicial phase of the criminal process,' or, phrased differently, 'when performing the traditional functions of an advocate.'" Garmon v. Cnty. of Los Angeles, 828 F.3d 837, 842 (citations omitted). This immunity extends to actions during both the pre-trial and post-trial phases of a case. See Demery v. Kupperman, 735 F.2d 1139, 1144 (9th Cir. 1984). "Prosecutorial immunity only protects … defendants from section 1983 damage claims; it does not protect [prosecutors] from suits for injunctive relief." Gobel v. Maricopa Cnty., 867 F.2d 1201, 1203 n.6 (9th Cir. 1989).

Plaintiff's seventh amended complaint asserts that Defendant Ford, the prosecutor in Plaintiff's criminal trial, lied to the jury, presented inadmissible pictures and illegal DNA evidence at trial, and conspired with Defendant Reinhart to cover up the victim's first story. However, "a prosecutor enjoys absolute immunity from a suit alleging that he maliciously initiated a prosecution, used perjured testimony at trial, or suppressed material evidence at trial." Genzler v. Longanbach, 410 F.3d 630, 637 (9th Cir. 2005). In this case, since Plaintiff seeks to hold Defendant Ford liable for performing functions "'intimately associated with the judicial phase of the criminal process[,]'" Defendant Ford is absolutely immune from Plaintiff's § 1983 damage claims. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### D. Habeas Action

To the extent that Plaintiff is attempting to challenge the validity of his conviction and his incarceration, the exclusive method for asserting that challenging is by filing a petition for writ of habeas corpus. It has long been established that state prisoners cannot challenge the fact or duration of their confinement in a § 1983 action, and that their sole remedy lies in habeas corpus relief. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005) ("[A] prison in state custody cannot use a § 1983 action to challenge the fact or duration of his confinement. He must seek federal habeas

corpus relief (or appropriate state relief) instead."). In this case, since the Court cannot determine that Plaintiff is seeking habeas corpus relief, the Court declines to convert Plaintiff's § 1983 action into a habeas petition. Trimble v. City of Santa Rosa, 49 F.3d 583, 586 (9th Cir. 1995) ("When the intent to bring a habeas petition is not clear, … the district court should not convert a defective section 1983 claim into a habeas petition.").

### E. Favorable Termination Rule

As a general matter, prisoners may not challenge the fact or duration of their confinement in a § 1983 action. Wilkinson v. Dotson, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or Heck bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement – either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." Id. at 81 (italics in original); see Heck v. Humphrey, 512 U.S. 477, 481-82, 487 (1994). Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82. Further, "[t]he California Supreme Court has not distinguished between the application of Heck to § 1983 claims and the application of analogous California law to state-law claims." Hooper v. County of San Diego, 629 F.3d 1127, 1134 (9th Cir. 2011) (citing Yount v. City of Sacramento, 43 Cal.4th 885, 902 (2008)). Therefore, Plaintiff's conviction and sentence will bar his § 1983 and state law claims if prevailing on those civil claims "would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence[.]" Beets v. County of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012) (internal punctuation omitted).

Here, Plaintiff states that he is "challenging the constitutionality of the procedure(s) used in reaching [his] conviction." (ECF No. 27, at 2.) As such, Plaintiff brings the following claims in his seventh amended complaint: (1) that Defendant Matteson deprived Plaintiff of the right to refuse to answer questions, improperly took pictures of Plaintiff's body, and tampered with the

vaginal swabs before submitting the swabs for testing; (2) that Defendant Bidegaray committed perjury at Plaintiff's trial and willfully detained Plaintiff without probable cause; (3) that Defendant Driscol lied regarding pictures of the victim that she did not take and submitted an incomplete S.A.R.T. kit; (4) that Defendant Ford lied to the jury, conspired with Defendant Reinhart to cover up the victim's first story, and introduced inadmissible pictures and illegal DNA evidence; (5) that Defendant Crow tested illegal DNA evidence from the police, gave perjured testimony, and failed to review any reports to make sure that the DNA evidence was properly collected; (6) that Defendant Reinhart provided Plaintiff with ineffective assistance of counsel at trial, conspired with Defendants Ford and Bidegaray to cover up the victim's first story, introduced perjured evidence, and lied to Plaintiff in order to prevent Plaintiff from discovering that the victim changed her story; (7) that Defendant Dwyer provided Plaintiff with ineffective assistance of counsel on appeal, conspired with Defendant Reinhart to cover up valid legal claims that should have been raised on appeal, and then lied to Plaintiff about the availability of claims that should have been raised in Plaintiff's appeal; (8) that Defendant Bickner failed to list Defendant Bidegaray's name in the witnesses' chronological index in the trial transcript in order to cover up the conspiracy between Defendants Reinhart, Ford, and Bidegaray; and (9) that Defendant Papadakis permitted improper evidence to be introduced at trial and improperly instructed the jury.

However, these claims amount to a collateral challenge to Plaintiff's underlying criminal conviction and, if these claims were resolved in Plaintiff's favor, the resolution "would necessarily imply or demonstrate the invalidity of the earlier conviction or sentence[.]" Beets, 669 F.3d at 1042 (internal punctuation omitted). The Court notes that some, or all, of these claims are more appropriately brought in a habeas corpus petition.[1]

Therefore, Plaintiff's claims are not cognizable in the instant action unless Plaintiff demonstrates that his conviction "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

---

[1] The Court expresses no opinion on the timeliness of any habeas corpus petition.

question by a federal court's issuance of a writ of habeas corpus[.]" Heck, 512 U.S. at 486-87. Here, Plaintiff has failed to allege any facts showing that his underlying criminal conviction has been reversed on appeal, expunged, or called into question by a state or federal court's issuance of a writ of habeas corpus. Consequently, the Court determines that Plaintiff's claims are barred by the favorable termination rule announced in Heck. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### F. State Law Claims

To the extent that Plaintiff is attempting to plead a state law claim for negligence or any other state law claim, California's Government Claims Act requires that a tort claim against a public entity or its employees be presented to the Department of General Services' Government Claims Program no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a timely written claim and action on, or rejection of, the claim are conditions precedent to suit. DiCampli-Mintz v. County of Santa Clara, 55 Cal.4th 983, 989-90 (2012); see also Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). Therefore, in order to state a tort claim against a public entity and/or one or more of its employees, a plaintiff must allege compliance with California's Government Tort Claim Act. DiCampli-Mintz, 55 Cal.4th at 990; see also Mangold, 67 F.3d at 1477.

Here, Plaintiff has failed to allege that he complied with the claim presentation requirements of California's Government Claims Act prior to bringing this action. Therefore, Plaintiff has failed to state any cognizable state law claim against any named Defendant. Despite being previously advised of this deficiency and given leave to amend, Plaintiff has been unable to cure this deficiency.

### V. Conclusion and Recommendation

For the reasons discussed herein, Plaintiff's seventh amended complaint fails to state a cognizable claim for relief. Despite being provided with the relevant pleading and legal standards in the Court's prior order screening Plaintiff's sixth amended complaint, Plaintiff has been unable to cure the identified deficiencies and further leave to amend is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY ORDERS the Clerk of the Court to randomly assign a Fresno District Judge to this action.

Furthermore, it is HEREBY RECOMMENDED that this action be dismissed, with prejudice, for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 13, 2019**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE